Application of Stephen F. **ROYKA** and Robert G. **Martin.**

Patent Appeal No. 9092.

United States Court of Customs and Patent Appeals.

Feb. 7, 1974.

Michael H. Shanahan, Rochester, N. Y., of record, for appellant; Thomas M. Webster, Rochester, N. Y., Boris Haskell, Washington, D. C. (Paris, Haskell & Levine), Washington, D. C., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 28 and 30–36 of application serial No. 648,701, filed June 26, 1967, entitled "Responsive Answer System." We reverse.

### The Invention

The appealed claims are directed to a device in the nature of an answer sheet for use in self-instruction and testing. The answer sheet may be associated with questions or separate therefrom. The essential features of the invention are that there are printed on the answer sheet in "response areas" meaningful information in permanent printing and confusing information in printing which can be removed, as by an eraser, both being legible so that a student, seeing a choice of answers to a question, must make a selection. Having made a selection, he then applies an eraser to the selected response area and some of the information will be readily removed. What remains advises him of the correctness or otherwise of his answer. The following figures from the drawings are illustrative:

PERMANENT MEANINGFUL INFORMATION PLUS REMOVABLE CONFUSING INFORMATION.

PERMANENT MEANINGFUL INFORMATION

A. TRUE YES NO WRONG

A. YES

B. FALSE NO YES RIGHT

B. NO

*FIG. 1A*        *FIG. 1B*

Fig. 1A shows two response areas to a given question before any removing ac-

tion by the student has taken place and Fig. 1B shows the permanent information remaining in each after erasure of the removable information. Of course, if the student makes an initial choice of area A, showing up "YES" or some other indication of a correct answer, he will not need to proceed further and erase the B area. In a modified form of the invention, a wrong selection, plus erasure, may expose, instead of or in addition to a statement that the answer is wrong, a number or other reference to further material which is to be studied.

A preferred method of printing the permanent meaningful information and the removable confusing information is by that type of xerography in which a fusible toner is used, the permanence of the printing depending on the extent to which the toner image is "fixed" or fused by heat. By successive printings of the two kinds of information with fixing to different degrees, one image can be made permanent and the other made subject to easy removal, both images retaining such similarity of appearance that the user of the answer sheet cannot tell them apart.

Claim 28 is the principal claim, all others being dependent thereon, and reads as follows:

28. A device for selectively indicating information comprising

a support having response areas for presenting information for selection,

permanent printing indicative of meaningful information permanently fixed to said support within a response area, and

removable printing indicative of confusing information removably fixed to said support within a response area,

said meaningful and confusing information being substantially legible even when said permanent and removable printing are fixed over one another on said support,

said permanent and removable printing being substantially similar such that an observer cannot determine

which information is permanent and which is removable

whereby the information within a response area is selected by attempting to remove the printing therein with the failure to remove printing identifying meaningful information.

Claims 30–36 add limitations which need not be considered except for noting that claims 33 and 34 alone specify the use of a xerographic toner, for which reason they were rejected on a different ground from the other claims.

### The Rejection

The following references were relied on:

| Reid et al. (Reid) | 356,695 | Jan. 25, 1887 |
|---|---|---|
| Bernstein et al. (Bernstein) | 3,055,117 | Sep. 25, 1962 |
| Lein et al. (Lein) | 3,364,857 | Jan. 23, 1968 |
| | (filed Feb. 2, 1966) | |

Claims 28, 30, 31, and 32 were rejected as anticipated under 35 U.S.C. § 102 by Bernstein; claims 28, 31, 32, 35, and 36 were rejected as anticipated under § 102 by Reid; and claims 33 and 34 were rejected under 35 U.S.C. § 103 for obviousness, on either Bernstein or Reid in view of Lein. These were the examiner's rejections and the board affirmed them, adhering to its decision on reconsideration.

Bernstein discloses an answer sheet in which printed information representing a response is "temporarily concealed from the observer" and he discloses a number of different ways of effectively concealing the response. His specification states:

The objects of the invention are accomplished by utilizing the hiding media to confuse the participant and to render the response and the hiding media indistinguishable and thus conceal the presence, absence, nature or position of the response from the participant. This may be effectuated by careful attention being paid to a number of factors including the design,

color and position of the hiding or confusing media.

Fig. 1 of Bernstein's drawings, illustrates some of his concealing means:

FIG. 1

The following is the written description:

Referring now to the drawing, FIG. 1 illustrates some of the many optically confusing patterns which may be positioned between the printed structure to be concealed and the point of observation. Column 11 shows the information which is to be concealed. This information is repeated in columns 12 through 16 but in each case is concealed by a pattern in accordance with the present invention. Column 12 utilizes a pattern comprising an alphabetical maze in both line and half tone screen. Column 13 utilizes a pattern comprising an absorbing field having a plurality of irregular dot-like interstices. Column 14 utilizes a pattern comprising a maze of plus signs combined with dots. Columns 15 and 16 illustrate irregular and non-repetitious patterns.

Bernstein says that if at least 50% of the response is actually covered by the opaque portions of the confusion pattern, complete concealment is obtained. He also says that added means of concealment may be used, such as scoring and embossing and perforating the paper in order to scatter the light or let it shine through.

Reid is entitled "Transformation Picture and Print." The invention is said to be useful for advertisements, Christmas cards, birthday cards, valentines, and the like and as a source of amuse-ment and instruction for children. It consists of a picture or print, part of which is permanently printed and part of which is removable from the paper on which it is printed. For the latter various soluble undercoatings or inks are described. If the picture is washed with a solvent, which may be water, the removable part disappears and the pictorial and/or typographic matter changes. The invention is illustrated by a typical nineteenth century temperance propaganda piece depicting the evils of drink. In the finished picture there are three scenes from left to right: Scene 1, the innocent child leads her father home from the pub; Scene 2, Father sits slumped in the kitchen chair with his bottle beside him, the family wash hanging above his head, this picture being entitled "The Effects of Drink"; Scene 3, Mother stands in front of a sign reading "Pawn Shop." Across the bottom of the picture is a legend which says "Wash the above and see what water will do." Fig. II shows the result of washing with water: Scene 1, a handsome young man and his happy daughter stroll on the street; Scene 2, Father sits erect in a well-appointed room at a cloth-covered table, apparently having a cup of tea, obviously a gentleman; Scene 3, Mother beams from the sideline and the Pawn Shop sign has vanished. Two new subscriptions appear and the words "The" and "Drink" have disappeared, the resultant being a new picture title reading "The Beneficial Effects of Temperance." "The Beneficial" and "Temperance" were covered by some soluble opaque in the original picture. No doubt the overall effect is instruction. Perhaps there was amusement in bringing about the transformation.

Lein relates to xerography and is relied on only for its disclosure of the removability of partially fused toner and the permanence of fully fused toner.

OPINION

As to the § 102 anticipation rejections, it will suffice to consider independent claim 28. If it is not fully met by Reid

or Bernstein, neither are the more limited dependent claims. It is elementary that to support an anticipation rejection, all elements of the claim must be found in the reference. We do not find claim 28 anticipated by Bernstein because, as we read the claim, it requires the display of *legible* meaningful and *legible* confusing *information* simultaneously, between which the user of the device may make a selection before he undertakes to remove any of the information from the response area selected by him. The element we find most clearly missing, contrary to the reasoning of the examiner and the board, is the legible confusing *information*. The Patent Office proposes to read this limitation on Bernstein's confusion patterns which are nothing but meaningless obscuring screens, conveying no information and providing the user with no basis for making a *selection*, as called for by claim 28. In appellants' device the legible confusing information—i. e., the wrong answers—are legible in the sense that they can be read as intelligible words, not merely a jumble of type serving to obscure the words of the wrong answers.

Appellants were fully aware of Bernstein and discussed its disclosures in their specification, distinguishing from this and other prior art, saying, in part:

> The inventive concept hereof confuses not by physical blocking as taught by the prior art, but by compounding, associating (including disarranging) permanent information with confusing information, usually at least some of which is similar in character to the permanent information as to render it impossible to tell which is permanent and which is removable confusing information. In the invention, generally no attempt is made to designedly physically cover the permanent information, but to confuse it beyond interpretation by the presentation of extraneous removable, confusing information.

Claims are not to be read in a vacuum and while it is true they are to be given the broadest *reasonable* interpretation during prosecution, their terms still have to be given the meaning called for by the specification of which they form a part. We cannot read the terms "legible" and "information" on Bernstein's confusion patterns, as did the examiner and the board. They are not "legible," as appellants use the term, and they convey no information.

As to anticipation by Reid, we find neither appellants' basic concept nor the substance of claim 28 to be disclosed. Apparently the solicitor could find little to support the rejection in Reid for all he says in his brief—so far as claim 28 is concerned—is:

> Reid discloses a sheet which may be used for instruction and which may have a removable design partly covering a fixed design * * *. Therefore, the disclosure of the reference encompasses the arrangement wherein a removable design covers a fixed design with both designs being substantially legible.

But claim 28 does not call for an arrangement wherein a removable design covers a fixed design. It calls for response areas, which Reid does not have, containing meaningful information in permanent printing together with removable printing conveying confusing information, both legible at the same time, between which a "selection" can be made. The only choice offered to the user by Reid is to follow the instruction to wash the whole visible picture with water or other solvent, thus removing the overprinting, to discover what the permanent picture is. The Patent Office attempt to read claim 28 on this reference is a tour deforce. We hold that Reid does not anticipate for failure to meet the limitations of claim 28 to "response areas," to the presentation of two categories of information (meaningful-permanent and removable-confusing) within such areas, and the possibility of selection. Anticipation requires a finding that the claimed invention be disclosed. It is not enough to say that appellants' invention and the reference are

both usable for instruction and both consist of permanent and removable printings on paper, as did the solicitor.

The dependent claims rejected with claim 28, as anticipated under § 102, are not anticipated since claim 28 is not anticipated. Some of them merely add features which are disclosed by the references and some do not. Insofar as they do not, they further negative anticipation. The examiner recognized this fact as to claims 33 and 34, which are limited to xerography, and therefore did not reject them under § 102. Similarly, he did not reject claim 30 on Reid or claims 35 and 36 on Bernstein. We find that claims 35 and 36 contain limitations which additionally distinguish from Reid. We have already noted that Reid has no "response areas" as required by claim 28 and so Reid does not disclose the structure of claim 35 which additionally requires both the correct and incorrect answers to appear within the same response area.

As to claim 36, the examiner said it "is merely a printed matter variation of the design of the reference," Reid. This is not a valid reason for rejection. Printed matter may very well constitute structural limitations upon which patentability can be predicated. We have commented on this matter In re Jones, 373 F.2d 1007, 54 CCPA 1218 (1967); and In re Miller, 418 F.2d 1392, 57 CCPA 809 (1969), and will not repeat ourselves. The limitations of claim 36 are not remotely suggested by Reid.

There remains the § 103 rejection of claims 33 and 34. Do they, taken together with all of the limitations of claim 28 from which they depend, define obvious subject matter? The difference between claim 28 and these two dependent claims is that they add the limitations to xerography. If Bernstein and Reid showed the claimed invention except for xerography, the addition of the Lein reference would make the subject matter of the claims obvious. But that is not the situation here. Adding the knowledge of xerographic technology to Bernstein or Reid still does not make the

invention of claims 33 and 34 obvious for the same reasons we have given above in discussing anticipation. The essence of appellants' invention, as set forth in claim 28, is still missing notwithstanding the addition of the Lein reference and we see nothing in the combinations of references which would have made the invention obvious to one of ordinary skill in the art at the time it was made. We will, therefore, reverse this rejection.

The decision of the board is *reversed*.

Reversed.