**In the Matter of the Application of Robert W. GROSE and Edith Marie Flanigen.**

**Appeal No. 78–573.**

United States Court of Customs and Patent Appeals.

Jan. 18, 1979.

Rehearing Denied March 1, 1979.

Richard G. Miller, New York City, atty. of record, for appellants; James C. Arvantes, Arlington, Va., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the rejection under 35 U.S.C. § 103 of claims 1–2 of application serial No. 432,137, filed January 10, 1974, for "Crystalline Aluminosilicate and Process for Preparing Same." We affirm.

*The Invention*

The invention is directed to a synthetic crystalline aluminosilicate of the molecular sieve or zeolitic type, named "zeolite Upsilon" by appellants. Claims 1 and 2 read:

1. A synthetic crystalline zeolitic molecular sieve having a composition expressed in terms of mole ratios of oxides as follows:

$$0.9 \pm 0.1 \, M \frac{n}{2} O \; : \; Al_2O_3 \; : \; 2.4 - 3.4 \, SiO_2 \; : \; 0-4.5 \, H_2O,[1]$$

wherein "M" is at least one or a mixture of two or more of hydrogen, ammonium or metal cations having a valence of "n", said zeolitic molecular sieve in its sodium cation form having an X-ray powder diffraction pattern containing at least those d-spacings set forth in Table B.

2. Composition according to claim 1 wherein "M" represents the sodium cation.

Table B is disclosed in the specification:

TABLE B

| d Å obs, | Relative Intensity | | |
|---|---|---|---|
| 13.4 ± 0.2 | M | | |
| 9.5 ± 0.2 | VS | | |
| 8.5 ± 0.15 | M | | |
| 5.47 ± 0.1 | S | | |
| 4.23 ± 0.08 | S | | |
| 3.87 ± 0.07 | S | | |
| 3.53 ± 0.06 | M | | |
| 3.30 ± 0.05 | M | | |
| 3.07 ± 0.05 | M | | |
| 2.98 ± 0.05 | S | W | = weak |
| | | S | = strong |
| 2.86 ± 0.05 | S | VS | = very strong |
| | | VW | = very weak |
| 2.83 ± 0.05 | M | M | = medium |

Table B represents an abbreviated version of the X-ray powder diffraction pattern used by appellants to identify their zeolite Upsilon and distinguish it from other zeolites. A more detailed X-ray diffraction pattern is disclosed in Table A of the specification:

TABLE A

| Bragg Angle, 2ϕ- Observed | Interplanar Spacing,d (Å) Observed | Relative Intensity, 100 I/Io | Relative Intensity |
|---|---|---|---|
| 6.59 | 13.412 | 17 | M |
| 9.34 | 9.468 | 100 | VS |
| 10.32 | 8.571 | 20 | M |

1. The subscript "$\underline{n}$" should read "$\underline{2}$". Appellants have filed an amendment to correct the error. $\frac{2}{n}$

TABLE A—Continued

| Bragg Angle, 2∅- Observed | Interplanar Spacing, d (A) Observed | Relative Intensity, 100 I/Io | Relative Intensity |
|---|---|---|---|
| 13.24 | 6.687 | 12 | W |
| 13.92 | 6.362 | 6 | VW |
| 14.75 | 6.006 | 7 | VW |
| 16.17 | 5.481 | 27 | S |
| 16.85 | 5.262 | 5 | VW |
| 17.65 | 5.025 | 4 | VW |
| 18.80 | 4.720 | 7 | VW |
| 19.30 | 4.599 | 7 | VW |
| 19.70 | 4.506 | 6 | VW |
| 21.00 | 4.230 | 32 | S |
| 21.56 | 4.122 | 8 | W |
| 21.98 | 4.044 | 10 | W |
| 22.99 | 3.868 | 25 | S |
| 23.34 | 3.811 | 12 | W |
| 24.13 | 3.688 | 10 | W |
| 25.20 | 3.534 | 17 | M |
| 25.76 | 3.458 | 10 | W |
| 26.75 | 3.332 | 6 | VW |
| 27.08 | 3.293 | 17 | M |
| 27.53 | 3.240 | 12 | W |
| 28.73 | 3.107 | 5 | VW |
| 29.08 | 3.071 | 17 | M |
| 29.86 | 2.992 | 25 | S |
| 30.16 | 2.963 | 15 | M |
| 30.53 | 2.928 | 6 | VW |
| 31.38 | 2.851 | 29 | S |
| 31.65 | 2.827 | 18 | M |
| 33.18 | 2.700 | 12 | W |
| 33.30 | 2.690 | 12 | W |
| 34.40 | 2.607 | 7 | VW |

Measurement of the X-ray powder diffraction pattern is described as follows:

Standard techniques were employed to obtain the foregoing data. The radiation was the K-alpha doublet of copper, and a Geiger-counter spectrometer with a strip-chart pen recorder was used. The peak heights, I and the positions as a function of 2 times theta ($\varnothing$), where theta is the Bragg angle, were read from the spectrometer chart. From these the relative intensities, 100 $I/I_0$, where $I_0$ is the intensity of the strongest line or peak, and

d(obs.), the interplanar spacing in Angstrom units corresponding to the recorded lines were calculated. The particular x-ray technique and/or apparatus employed, the humidity, the temperature, the orientation of the powder crystals and other variables, all of which are well known and understood by those skilled in the art of x-ray crystallography or diffraction, can cause some variation in the intensities and positions of the x-ray lines.

Appellants disclose that zeolite Upsilon is prepared by hydrothermal crystallization from a gel with the following mole ratios of oxides:

$Na_2O/SiO_2$      0.8 - 1.4

$SiO_2/Al_2O_3$      3.0 - 7

$H_2O/Na_2O$      32 - 50, preferably about 43

Crystallization is conducted by heating the gel, at 100 °C and atmospheric pressure, until the crystalline product has been obtained. The presence of chromium or iron oxides, in addition to the above reactants, is disclosed as essential to obtaining zeolite Upsilon as the major zeolite product.[2] After crystallization, the zeolite crystals are separated by filtration, washed with distilled water until the pH of the effluent is between 9 and 12, and dried at 110 °C.

Zeolite Upsilon is disclosed as being useful as a desiccant, particularly in drying hydrocarbon gas streams and air streams to be fractionated in the liquid state, and as an absorbent for carbon dioxide.

### The Rejection

Claims 1 and 2 were rejected under 35 U.S.C. § 102 or at least 35 U.S.C. § 103 as unpatentable over the single reference patent to Milton, No. 3,030,181, dated April 17, 1962.

[2] For iron-containing reactant mixtures, Fe2O3 from about 0.5 to 2.5 weight percent, based on the weight of silica, is said to be effective. For chromium-containing reactant mixtures, 0.5 to 1.0 mole of Cr2O3 per mole of Al2O3 is described as satisfactory.

Milton discloses a synthetic crystalline aluminosilicate, called zeolite R, with the following chemical formula:

$$0.9 \pm 0.2 \, Na_2O : Al_2O_3 : WSiO_2 : XH_2O$$

wherein W = 3.45 - 3.65 and X = 7 when fully hydrated.

Milton's zeolite R has an X-ray powder diffraction pattern substantially like that shown in this table:

TABLE I

*X-Ray Diffraction Patterns of Synthetic Zeolite R*
SODIUM ZEOLITE R
[$d$=Interplanar Spacing in A.; I/I Max.=Relative Intensity]

| d, A. | 100 (I/I max.) |
|---|---|
| 9.51 | 88 |
| 6.97 | 35 |
| 5.75 | 16 |
| 5.61 | 26 |
| 5.10 | 45 |
| 4.75 | 12 |
| 4.37 | 78 |
| 4.13 | 12 |
| 4.02 | 14 |
| 3.92 | 35 |
| 3.80 | 16 |
| 3.03 | 41 |
| 3.48 | 25 |
| 3.34 | 12 |
| 3.21 | 18 |
| 3.13 | 12 |
| 2.95 | 100 |
| 2.89 | 16 |
| 2.80 | 14 |
| 2.71 | 14 |
| 2.66 | 10 |
| 2.62 | 25 |
| 2.53 | 22 |
| 2.39 | 10 |
| 2.14 | 6 |
| 2.10 | 14 |
| 1.93 | 10 |
| 1.89 | 10 |
| 1.82 | 18 |
| 1.76 | 6 |
| 1.73 | 16 |
| 1.69 | 4 |

Milton's crystallization process for preparing zeolite R may use a reactant mixture with these mole ratios of oxides:

| | |
|---|---|
| $Na_2O/SiO_2$ | 0.81 - 1.0 |
| $SiO_2/Al_2O_3$ | 3 - 4.5 |
| $H_2O/Na_2O$ | 40 - 80 |

The process conditions are essentially the same as those described by appellants, except that Milton makes no reference to the presence of iron or chromium oxides in the reaction mixture.

The examiner viewed the chemical composition of the claimed zeolite as encompassed by that of Milton's zeolite R. The only arguable chemical difference between the two zeolites, i. e., Milton's minimum $SiO_2$/$Al_2O_3$ ratio of 3.45 as compared to appellants' maximum $SiO_2$/$Al_2O_3$ ratio of 3.4, was not found to be a significant distinguishing feature because "the claimed numerical value of '3.4' which is not limited as to the digit in the second decimal place reads on or encompasses Milton's numerical value of '3.45'."

The examiner found the differences between appellants' 12 X-ray diffraction d-spacings and those reported for Milton's zeolite R insufficient to establish that the claimed zeolite has a different crystal structure from zeolite R because, inter alia, X-ray diffraction data for a given zeolite can vary depending on variable factors. Appellants were invited to submit expert testimony under 37 CFR 1.132, explaining why the d-spacings recited in the claims define a crystal structure different from that of Milton, but no such testimony was submitted.

## The Board

The board essentially agreed with the examiner that appellants' and Milton's zeolites are "the same chemically." After analyzing the maximum $SiO_2$/$Al_2O_3$ ratio of 3.4 in the instant claims and Milton's minimum ratio of 3.45 from the standpoint of significant digits, the board concluded that "the differences, if any, are *de minimis* and of no significance."

In comparing appellants' and Milton's d-spacings, the board found substantial differences in their values and relative intensity.[3] Concluding therefrom that the zeolites are different materials, the board reversed the rejection under 35 U.S.C. § 102.

In addressing the question of obviousness, the board noted that the claimed zeolite had been disclosed as useful for only the purposes known in the art for zeolites in general, that no unexpected advantages were evi-

---

**3.** Examiner-in-Chief Sturtevant filed a specially concurring opinion, setting forth her view that using the data in Table B, as opposed to the more complete detailed data of Table A, to define the X-ray diffraction pattern in the claims was an insufficient method of "fingerprinting" appellants' zeolite.

dent, and that the only distinguishing feature of the claimed zeolite, i. e., the different diffraction pattern, had not been shown to be useful in any manner. Thus, the board affirmed the 35 U.S.C. § 103 rejection, saying:

The new zeolites are certainly closely related to known zeolites, being chemically identical, and the properties of the new zeolite must be considered in determining its patentability, as in the case of closely related chemical compounds (homologs, isomers, analogs). See In re Papesch, 315 F.2d 381, 137 USPQ 43. Accordingly, consistent with past decisions, we will allow claims to new and unobvious forms which exhibit a significant change in properties, but we will refuse claims to mere novel forms which do not possess significantly different properties. The present case falls in the latter category.

In requesting reconsideration, appellants repeated their argument that the claimed zeolites are not prepared by modifying Milton's zeolite but rather by a unique process, requiring the presence of $Fe_2O_3$ or $Cr_2O_3$ in the reactant mixture, and that nothing of record suggests or renders obvious this unique process. In response, the board dismissed the arguments as pertaining to the process for making the zeolites, while the claims are drawn not to the process but to the composition itself.

## Issue

The issue is whether the zeolite of claims 1 and 2 would have been obvious to one of ordinary skill in the zeolite art in view of Milton.

## OPINION

■ The board concluded that appellants' zeolite, because it is a different material from Milton's zeolite R, was not anticipated, and therefore reversed the § 102 rejection, citing In re Arkley, 455 F.2d 586, 59 CCPA 804, 172 USPQ 524 (1972), and In re Royka,

490 F.2d 981, 180 USPQ 580 (CCPA 1974). The board's affirmance of the rejection for obviousness under § 103 encompasses the question of whether appellants' and Milton's zeolites are different materials, however, because anticipation is the ultimate in obviousness. See In re Pearson, 494 F.2d 1399, 1402, 181 USPQ 641, 644 (CCPA 1974); In re Kalm, 378 F.2d 959, 962, 54 CCPA 1466, 1470, 154 USPQ 10, 12 (1967). We review the decision, not the reasoning, of the board. If the record fails to establish a significant difference in the involved zeolites, the board's decision upholding the § 103 rejection must be affirmed.[4]

The claims define appellants' synthetic zeolite in terms of its chemical composition and in terms of its physical, i. e., crystal, structure. We agree with the board's conclusion that the claimed zeolite and Milton's zeolite R have the same chemical composition, and with the board's analysis in support thereof. Hence discussion of the alleged difference in $SiO_2/Al_2O_3$ molar ratios is unnecessary. The significance of differences in X-ray diffraction data, however, does require consideration.

Appellants have followed the apparently universal practice in this art of "fingerprinting" the crystal structure of their zeolite through a characteristic X-ray powder diffraction pattern. Thus, the first question is whether the pattern recited in appellants' claims defines a crystal structure different from that of Milton.

Comparison of Table B of appellants' claims with Table I of Milton establishes that the X-ray diffraction patterns are very similar. The differences in the values and relative intensities of the d-spacings[5] caused the board to conclude that the two zeolites are different materials. On the present record we disagree with that conclusion of the board.

X-ray powder diffraction data are merely an analytical tool for identifying polycrys-

---

4. The present case illustrates the value, in appropriate cases, of adding a § 103 rejection to a rejection under § 102.

5. Appellants' zeolite is claimed as having d-spacings 13.4 and 8.5 of medium relative

intensity. Milton's zeolite R is not disclosed as having such d-spacings. Other alleged differences in appellants' zeolite are said to be reflected by d-spacings 5.47 A and 4.23 A.

talline materials according to differences in crystal structure.[6] The ultimate question, in ascertaining whether a particular zeolite is a different species from those of like chemical composition, is whether it has the same crystal structure. Appellants are claiming a crystal structure. Thus, we are concerned not with whether there are differences in d-spacing values and relative intensities, but with whether such differences support a conclusion that appellants' and Milton's zeolites have different crystal structures.

Appellants disclosed in their specification, as well known to those skilled in X-ray crystallography, that the apparatus used, the humidity, temperature, orientation of the powder sample, and other variables, can cause variations in the values and relative intensities of d-spacings. Appellants' specification does not, however, disclose the expected magnitude of such variations.

An indication of the possible magnitude of such variations can be found in an earlier Milton patent, also of record, No. 3,010,789, dated November 28, 1961, which states:

The relative intensities and the positions of the X-ray lines are only slightly different for the various, ion-exchanged forms of zeolite H.[7] The patterns show

---

6. "Polycrystalline" is defined as "1. Pertaining to a material composed of aggregates of individual crystals. 2. Characterized by variously oriented crystals." McGraw-Hill Dictionary of Scientific and Technical Terms 1146 (1974). The properties of polycrystalline materials are largely the average of the properties of the individual crystals. Where the single crystals in a composition of matter are not large enough for individual handling, the crystalline properties are identified through powder, rather than single crystal, diffraction data. The polycrystalline nature of zeolites dictates the use of powder diffraction data for distinguishing one zeolite species from another.

7. The X-ray diffraction data for the various ion-exchanged forms of zeolite H are disclosed as follows:

*Table A*

| $K_3H$ | | $Na_2H$ | | $(NH_4)_2H$ | | $MgH$ | | $Ce_2H_3$ | | $CaH$ | | $ZnH$ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| d(A.) | 100I/I₀ | d(A.) | 100I/I₀ | d(A.) | 100I/I₀ | d(A.) | 100I/I₀ | d(A.) | 100I/I₀ | d(A) | 100I/I₀ | d(A.) | 100I/I₀ |
| 13.4 | 64 | ...... | ...... | 13.2 | 32 | 13.4 | 12 | 13.2 | 13 | ...... | ...... | 13.2 | 100 |
| 11.6 | 100 | 11.6 | 26 | 11.5 | 25 | 11.9 | 16 | 11.6 | 21 | ...... | ...... | 11.6 | 98 |
| 10.6 | 9 | ...... | ...... | ...... | ...... | ...... | ...... | 10.8 | 15 | ...... | ...... | ...... | ...... |
| | | | | | | | | 10.3 | 21 | | | | |
| 9.50 | 24 | 9.00 | 65 | 9.50 | 43 | 9.40 | 28 | 9.60 | 27 | 9.40 | 80 | 9.60 | 84 |
| ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | 8.66 | 21 | ...... | ...... | ...... | ...... |
| | | | | | | | | | | | | 8.04 | 37 |
| 6.86 | 62 | 6.91 | 35 | 6.75 | 61 | 6.80 | 60 | 6.80 | 60 | ...... | ...... | 6.91 | 21 |
| 6.03 | 11 | | | | | 6.02 | 16 | | | | | 6.02 | 7 |
| 5.37 | 28 | 5.21 | 30 | 5.21 | 27 | 5.21 | 48 | 5.27 | 40 | 5.15 | 100 | 5.15 | 49 |
| 4.74 | 8 | | | | | | | | | 4.67 | 30 | | |
| 4.46 | 9 | | | | | | | | | | | | |
| 4.41 | 8 | 4.37 | 35 | | | | | | | | | 4.41 | 26 |
| 4.31 | 16 | 4.31 | 35 | 4.31 | 32 | 4.31 | 48 | 4.31 | 54 | ...... | ...... | 4.31 | 23 |
| 4.19 | 23 | 4.15 | 17 | 4.19 | 25 | 4.15 | 20 | 4.19 | 29 | 4.11 | 55 | 4.21 | 42 |
| ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | 4.07 | 25 | ...... | ...... | 4.13 | 35 |
| | | | | 4.04 | 25 | | | | | | | | |
| 3.96 | 48 | 3.96 | 22 | 3.95 | 39 | 3.93 | 52 | 3.93 | 46 | 3.90 | 70 | 3.93 | 49 |
| 3.72 | 17 | 3.72 | 13 | | | | | | | 3.78 | 50 | 3.69 | 42 |
| ...... | ...... | 3.45 | 35 | 3.42 | 21 | ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... |
| 3.36 | 16 | 3.34 | 17 | ...... | ...... | | | | | | | 3.37 | 23 |
| 3.26 | 18 | | | | | | | | | | | 3.23 | 37 |
| ...... | ...... | 3.23 | 22 | | | | | | | | | 3.25 | 41 |
| 3.16 | 25 | 3.16 | 26 | 3.15 | 29 | ...... | ...... | 3.16 | 42 | ...... | ...... | ...... | ...... |
| 3.14 | 22 | ...... | ...... | ...... | ...... | 3.14 | 36 | ...... | ...... | 3.14 | 40 | 3.12 | 23 |
| 3.00 | 31 | 2.99 | 52 | 2.98 | 54 | 2.96 | 60 | 3.00 | 46 | 3.06 | 40 | 2.98 | 89 |
| 2.92 | 94 | 2.93 | 100 | 2.91 | 100 | 2.90 | 100 | 2.92 | 100 | 2.92 | 80 | 2.94 | 75 |
| ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | 2.87 | 90 | ...... | ...... |
| ...... | ...... | ...... | ...... | 2.72 | 23 | ...... | ...... | ...... | ...... | 2.81 | 90 | ...... | ...... |
| 2.66 | 17 | ...... | ...... | ...... | ...... | ...... | ...... | 2.68 | 21 | ...... | ...... | ...... | ...... |
| 2.66 | 25 | ...... | ...... | 2.66 | 14 | ...... | ...... | ...... | ...... | ...... | ...... | 2.65 | 28 |
| 2.63 | 8 | 2.63 | 14 | | | | | | | | | | |
| 2.50 | 44 | 2.00 | 30 | 2.58 | 36 | 2.59 | 48 | 2.59 | 42 | 2.00 | 55 | 2.62 | 58 |
| 2.55 | 15 | 2.52 | 13 | ...... | ...... | 2.52 | 16 | ...... | ...... | 2.51 | 40 | ...... | ...... |
| 2.34 | 7 | ...... | ...... | 2.33 | 7 | ...... | ...... | ...... | ...... | | | 2.36 | 14 |
| 2.32 | 17 | | | 2.31 | 10 | 2.32 | 24 | 2.32 | 17 | ...... | ...... | 2.33 | 19 |
| 2.28 | 60 | 2.30 | 13 | 2.28 | 29 | 2.28 | 60 | 2.28 | 50 | 2.25 | 30 | 2.30 | 19 |
| 2.19 | 28 | 2.17 | 13 | 2.18 | 21 | 2.18 | 24 | 2.19 | 25 | ...... | ...... | 2.21 | 19 |
| 2.10 | 21 | 2.00 | 9 | 2.00 | 14 | 2.09 | 24 | 2.09 | 25 | ...... | ...... | 2.10 | 23 |
| ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | ...... | 2.08 | 19 |
| ...... | ...... | ...... | ...... | ...... | ...... | 1.90 | 12 | 1.90 | 15 | ...... | ...... | ...... | ...... |
| 1.90 | 8 | 1.84 | 22 | 1.54 | 18 | 1.84 | 32 | 1.85 | 29 | 1.84 | 30 | 1.84 | 3 |
| 1.85 | 29 | ...... | ...... | ...... | ...... | ...... | ...... | 1.75 | 13 | 1.80 | 30 | ...... | ...... |
| 1.76 | 7 | | | | | | | | | | | | |
| 1.73 | 11 | | | | | | | | | | | | |
| 1.71 | 33 | 1.72 | 17 | 1.71 | 18 | 1.71 | 24 | 1.71 | 21 | 1.60 | 25 | 1.72 | 23 |

substantially all of the same lines, and all meet the requirements of a unit cell of approximately the same size, indicating that the spatial arrangement of silicon, oxygen and aluminum atoms, i. e., the arrangement of the $AlO_4$ and $SiO_4$ tetrahedra, are essentially identical in all forms of zeolite H. The appearance of a few minor lines, and the disappearance of others, from one form of zeolite H to another, as well as slight changes in intensities and positions of some of the X-ray lines, may be attributed to the different sizes and numbers of exchangeable cations present in the various forms of the zeolite.

The differences in diffraction data disclosed for the various forms of zeolite H are as great as, and in some respects are greater than, the differences between appellants' claimed zeolite and Milton's zeolite R.

Differences between appellants' zeolite and Milton's zeolite R cannot be attributed to a difference in cation form, because the diffraction data for both are those of the fully cationized sodium cation form.

The specification of the Milton '789 patent also speaks, in language similar to that in appellants' specification, of variations in diffraction data to be expected from other sources:

> The particular X-ray technique and/or apparatus employed, the humidity, the temperature, the orientation of the powder crystals, and other variables, all of which are well known and understood to those skilled in the art of X-ray crystallography or diffraction, may also cause some variations in the intensities and positions of the X-ray lines. Thus, the X-ray data given herein to identify zeolite H are not to exclude those materials which, due to some variable mentioned above or otherwise known to those skilled in the art, fail to show all of the tabulated X-ray lines, or show a few extra ones that are permissible to the crystal system of the zeolite, or show a slight change in intensity or shift in position of some of the X-ray lines.

The present record does not support the conclusion that appellants' zeolite and Milton's zeolite R are zeolites having different crystal structures. The admitted permissible variations in the diffraction data of appellants' zeolite would embrace, at least prima facie, the diffraction data disclosed for Milton's zeolite R. Thus, this is not a situation where the difference in diffraction pattern could only be attributed to a difference in crystal structure.

The prima facie case stands unrebutted, appellants having declined the examiner's invitation to submit expert testimony. Appellants assert in their reply brief that "the ultimate proof of a zeolite's identity resides in its X-ray diffraction pattern," and that "all other evidence, including expert testimony, can only be secondary, i. e., a rationalization of the X-ray data." Appellants are correct in stating that ultimate identification of different crystal structures in this art resides in the X-ray diffraction pattern. They incorrectly evaluate the potential significance of evidence directed to the diffraction data itself, such as testimony that the difference in data between appellants' and Milton's zeolites greatly exceeds the magnitude of expected variations in data, and comparative data obtained on the same apparatus under the same conditions.

Though the board's decision must be affirmed, its reasoning with respect to obviousness considerations was incorrect. The board's basis for finding prima facie obviousness was that the involved zeolites were "closely related" in much the same manner that homologs are closely related, i. e., they are structurally obvious one from the other. Citing In re Papesch, supra, the board concluded that the claimed zeolite was not patentable, absent a showing of some properties significantly different from those of Milton's zeolite R.

No reason exists for applying the law relating to structural obviousness of those compounds which are homologs or isomers of each other to this case. When the PTO seeks to rely upon a chemical

theory, in establishing a prima facie case of obviousness, it must provide evidentiary support for the existence and meaning of that theory. *In re Mills,* 281 F.2d 218, 223–24, 47 CCPA 1185, 1191, 126 USPQ 513, 517 (1960). The known structural relationship between adjacent homologs, for example, supplies a chemical theory upon which a prima facie case of obviousness of a compound may rest. A zeolite, like those of the instant case, is not a compound which is a homolog or isomer of another, but is a mixture of various compounds related to each other by a particular crystal structure. Moreover, no other chemical theory has been cited as a basis for considering appellants' zeolite as prima facie obvious in view of Milton's zeolite R.

The board's apparent rejection of appellants' argument that the prior art discloses no method for obtaining the claimed zeolite, on the ground that the claims are drawn to the composition, was incorrect. One of the assumptions underlying a prima facie obviousness rejection based upon a structural relationship between compounds, such as adjacent homologs, is that a method disclosed for producing one would provide those skilled in the art with a method for producing the other. That assumption does not apply, however, to the present case.

Determining whether a chemical composition is prima facie obvious from another may rest on whether differences in structure and properties of the compositions can be accounted for by obvious modifications in the synthesis process or by obvious modifications of one composition to yield the other. If the differences in X-ray diffraction data between the zeolites here involved had indicated an actual difference in crystal structure, the present record would belie a conclusion that such differences resulted from obvious modifications of any prior art synthesis process or from obvious modifications of Milton's zeolite R to yield the claimed zeolite.[8]

8. Assuming appellants' zeolite has a different crystal structure from Milton's zeolite R, nothing of record indicates that one skilled in the

Though nonobviousness of appellants' process for preparing their claimed composition would not be determinative of nonobviousness of the composition, a holding that the composition would have been nonobvious would require that the prior art fail to disclose or render obvious a process for preparing it.

[I]f the prior art of record fails to disclose or render obvious a method for making a claimed compound, at the time the invention was made, it may not be legally concluded that the compound itself is in the possession of the public. In this context, we say that the absence of a known or obvious process for making the claimed compounds overcomes a presumption that the compounds are obvious * * *.

*In re Hoeksema,* 399 F.2d 269, 274, 55 CCPA 1493, 1500, 158 USPQ 596, 601 (1968) (footnote omitted). Failure of the prior art to disclose or render obvious a method for making any composition of matter, whether a compound or a mixture of compounds like a zeolite, precludes a conclusion that the composition would have been obvious. Hence the board, having concluded that the involved zeolites were different, was incorrect in its apparent disregard of "other factors which must be given weight in determining whether the subject matter as a whole would have been obvious, namely, whether the prior art suggests the particular structure or form of the * * * composition as well as suitable methods of obtaining that structure or form." *In re Cofer,* 354 F.2d 664, 668, 53 CCPA 830, 835, 148 USPQ 268, 271 (1966).

## Conclusion

The present record having failed to establish that the claimed zeolite is a different crystalline material from that of Milton's zeolite R, the decision of the board sustain-

art would be able to prepare the claimed zeolite by a process employing Cr2O3 or Fe2O3, or otherwise.

ing the rejection of claims 1 and 2 under 35 U.S.C. § 103 is *affirmed.*

*AFFIRMED.*

On Petition for Rehearing.

PER CURIAM.

In a petition for rehearing, with respect to our decision and opinion of January 18, 1979, appellants assert that the ranges of values for the d-spacings listed in Table B of their specification reflect the magnitude of variations in data expected from differences in apparatus, temperature, humidity, and the like. However, neither the specification nor any *evidence* of record equates the Table B ranges of values with the data variations from such sources.

Appellants also assert that their specification tentatively assigns the claimed zeolite to the cubic symmetry class, citing a publication to indicate that Milton's zeolite R is generally considered of rhombohedral or hexagonal symmetry.

Appellants' assertions in support of the petition may point toward a conclusion that the claimed zeolite has a unique crystal structure. Neither assertion, however, is part of the record produced before the PTO. Hence, neither may be considered on this appeal.

The petition is denied.