NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1461
(Serial No. 09/871,349)

IN RE PAUL J. BRYAN

Paul J. Bryan, of Raleigh, North Carolina, pro se.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Joseph G. Piccolo, and William LaMarca, Associate Solicitors.

Appealed from: United States Patent and Trademark Office
Board of Patent Appeals and Interferences

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1461
(Serial No. 09/871,349)

IN RE PAUL J. BRYAN

Appeal from the United States Patent and Trademark Office, Board of
Patent Appeals and Interferences.

_____

DECIDED: March 31, 2009

_____

Before MICHEL, Chief Judge, SCHALL, and LINN, Circuit Judges.

PER CURIAM.

DECISION

Paul J. Bryan appeals from the decision of the United States Patent and
Trademark Office ("PTO") Board of Patent Appeals and Interferences ("Board") affirming
the rejection of claims 1-11 and 13-15 of his patent application, Serial No. 09/871,349,
as obvious. Ex parte Bryan, No. 2007-1590, 2008 WL 1057622 (B.P.A.I. April 9, 2008).
Because substantial evidence supports the Board's underlying factual findings and
because the ultimate conclusion of obviousness based on those findings is not
erroneous, we affirm.

DISCUSSION

I.

Mr. Bryan's patent application describes a "game board and game having a touring band theme." During the game, players attempt to assemble a music band, as well as move their "player" tokens along a path outlined on the game board from a starting point to an end point, i.e., "the performing stage." The patent application also explains that players must draw from several decks of cards—namely, decks labeled as "Consequence," "Band Member," and "Band Equipment"—at various times during the game. Independent claim 1 is illustrative of the claims on appeal:

> 1. A game board and game, comprising:
>
> (a) a game board having a starting area, a network of irregular paths that lead from the starting area; and a central performing stage located generally centrally on the game board and connected to at least one segment of the network of paths;
>
> (b) the network of paths including a series of segments wherein each segment is broken down into increments and wherein at least some of the increments include indicia formed thereon that dictate an action for landing on a particular increment;
>
> (c) a series of tokens provided with the game board wherein a token may be assigned to one player and during the course of a game the token is advanced along one or more of the segments of the network of paths;
>
> (d) at least one die that is used to determine the number of increments that a player's token can be advanced during the course of the game;
>
> (e) a supply of money that during the course of the game is distributed to the players;
>
> (f) a deck of "Consequence" cards that are keyed to certain increments on the network of paths, each "Consequence" card having indicia thereon that sets forth a consequence and wherein a player landing on an increment that calls for drawing a consequence card must comply with the directive set forth on the drawn consequence card;
>
> (g) a deck of "Band Member" cards with the deck being divided into a series of groups with each group of "Band Member" cards designating members of a band;

(h) a series of "Band Equipment" cards with each card designating band equipment; and

(i) wherein the object of the game is for each player to advance his or her token along the network of paths and reaches the central stage with a predetermined number of one group of "Band Member" cards and a "Band Equipment" card.

The PTO examiner to whom the application was assigned rejected claims 1-11 and 13-15 as obvious under 35 U.S.C. § 103(a). Specifically, the examiner rejected claims 1-5, 7-11, and 13-15 as obvious in view of U.S. Patent No. 4,998,736 ("Elrod") and claim 6, which is dependent upon claim 1, as obvious in view of Elrod combined with U.S. Patent No. 6,279,908 ("Hunsberger"). Subsequently, Mr. Bryan appealed the examiner's rejections to the Board.

On appeal, the Board found that Elrod discloses a musical band-themed board game with nearly the exact structure that Mr. Bryan claimed—including decks of labeled game cards and a network of game paths—except for the specific printed matter on the game cards, e.g., cards labeled as "Consequence" cards. Ex parte Bryan, 2008 WL 1057622, at *4-5. The Board, however, determined that the specific printed matter— e.g., "Consequence"—could not patentably differentiate the claimed structure from the prior art because the printed matter was not functionally related to the claim elements. Regarding dependent claim 6, which adds the limitation of color-coding the game cards, the Board found that Hunsberger teaches color-coding cards to distinguish one deck of cards from another. Id. at *6-7. The Board therefore sustained the examiner's decision that Elrod rendered claims 1-5, 7-11, and 13-15 obvious, and that Elrod in combination with Hunsberger rendered dependent claim 6 obvious. Id. at *7. Mr. Bryan timely appeals the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II

A claimed invention is unpatentable if the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. See 35 U.S.C. § 103(a). The ultimate determination of obviousness is a legal conclusion based on underlying findings of fact. See, e.g., In re DBC, 545 F.3d 1373, 1377 (Fed. Cir. 2008). We review the Board's ultimate determination of obviousness de novo and its underlying factual findings for substantial evidence. See, e.g., id.

On appeal, Mr. Bryan does not appear to argue that Elrod fails to disclose the majority, if not all, of the structural elements in the claims. Rather, he reiterates the same primary argument that he made to the Board—that the various "printed matter" indicia on his game cards and game board are functionally related to the structural elements of his claimed game apparatus. On this basis, Mr. Bryan argues that Board consequently erred in ultimately determining that the printed matter could not patentably distinguish his claimed invention from the prior art. Specifically, according to Mr. Bryan, the printed matter on his game cards allow the cards to be "collected, traded, and drawn"; "identify and distinguish one deck of cards from the other"; and "enable[ ] the cards to be traded and blind drawn."

Because there is no "new and unobvious functional relationship between the printed matter and the substrate," we agree with the Board that the printed matter in Mr. Bryan's claims cannot render his claimed structure unobvious. In re Ngai, 367 F.3d 1336, 1338 (Fed. Cir. 2004) (quoting In re Gulack, 703 F.2d 1381, 1385 (Fed. Cir. 1983)). We therefore affirm the Board's decision that claims 1-11 and 13-15 are

obvious. Mr. Bryan emphasizes that the printed matter set out in the claims—e.g., the "Consequence," "Band Member," and "Band Equipment" language—is the distinguishing feature over the prior art. This language and the substance of the printed matter, however, cannot impart patentability, as it is "'useful and intelligible only to the human mind.'" In re Lowry, 32 F.3d 1579, 1583 (Fed. Cir. 1994) (quoting In re Bernhart, 417 F.2d 1395, 1399 (CCPA 1969)). Indeed, the printed matter does not depend on the game's structural elements, and the game's structural elements do not depend on the printed matter. See Ngai, 367 F.3d at 1339 ("[T]he printed matter in no way depends on the kit, and the kit does not depend on the printed matter."). Thus, the printed matter does not exploit, or interrelate with, the underlying structural elements and, therefore, is not "functionally related to the substrate." See id. Importantly, Mr. Bryan does not contend either that his claimed game apparatus is structurally different from the game apparatus in Elrod or that applying various labels to game cards is a new relation of printed matter to a structure. Thus, the claimed structural features are old and the relationship of the printed matter to those structural features is also old. Accordingly, because Mr. Bryan claims neither a new physical structure nor a new relation of printed matter to physical structure, and because the distinction between the claims and the prior art is nonfunctional printed matter, Mr. Bryan's claims are not patentable over the prior art.

While Mr. Bryan asserts that the printed matter is functionally related because, for example, it allows the cards to be "collected, traded, and drawn" during game play, these types of arguments do not pertain to what he claims and seeks to patent—the structure of the game apparatus. Rather, these arguments pertain to the patentability of

methods or processes of playing the game, which are irrelevant to the apparatus claims at issue. Indeed, if we were to accept Mr. Bryan's arguments, it seems anyone could patent the structure of a pre-existing game simply by changing the game's theme without changing its structure. See Ngai, 367 F.3d at 1339 ("If we were to adopt [the applicant's] position, anyone could continue patenting a product indefinitely provided that they add a new instruction sheet to the product.").

Nor do the only other slight claim distinctions noted by Mr. Bryan—three decks of game cards and color-coding the game cards—sufficiently render his claimed invention nonobvious. Although Elrod explicitly discloses only two decks of game cards, the addition of a third deck is nothing more than a "predictable use of prior art elements according to their established functions" and, as such, is not a patentable distinction. KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 127 S. Ct. 1727, 1740 (2007). Likewise regarding claim 6, combining Elrod and Hunsberger to show color-coding the game cards is simply the "combination of familiar elements according to known methods . . . yield[ing a] predictable result[ ]." Id. at 1739. In fact, not only is it well known in the art to use different colors to differentiate game items, but Elrod itself teaches differentiating between game pieces by using different colors. See Elrod col.14 ll.5-6.

For the foregoing reasons, the decision of the Board is affirmed.

No costs.